PAUL J. SMITH, PROSECUTOR-APPELLANT, v. THEODORE KLEMM, TRADING AS WEST HUDSON DECORATING COMPANY, RESPONDENT-APPELLEE.

Submitted January 19, 1937—Decided July 27, 1937.

Before BROGAN, CHIEF JUSTICE, and Justices CASE and PERSKIE.

For the prosecutor-appellant, *Herbert C. Dolan.*

For the respondent-appellee, *Henry Grossman* (*Isidor Kalisch,* on the brief).

BROGAN, CHIEF JUSTICE. This is a workmen's compensation case and is before us on a writ of *certiorari,* the employe appearing as prosecutor. That this case presents a most

unusual situation will be clear when the following pertinent facts, as they appear in the state of the case, are read. We find a claim petition for compensation without date or number or any indication to show just when it was filed in the workmen's compensation bureau.

We gather from the petition that the employe seeks increased compensation; that the accident happened on October 10th, 1930; that the injuries arose out of and in the course of the employment, are permanent in character, and alleged to consist of a displaced fracture of the right hip and pelvis, shortening of the right leg, disability to the back, as well as curvature of the spine. Petitioner asserts that he is totally and permanently disabled. His weekly wages were $50 and the employer has, since the accident, paid the employe $2,497.14 by agreement, not by award of the bureau.

The respondent employer filed an answer which was sworn to on March 11th, 1933. Many of the questions on the printed form for making answer carry no reply; others convey no information. As an example of the latter, we find, "No. 22. Give your understanding of any permanent injury which has resulted, either amputation or loss of usefulness of any member or impairment of any physical organ. Explain fully." The employer's reply is, "No knowledge." This answer is made twenty-eight months after the accident. In reply to the twenty-ninth question, the employer answers that he has paid $2,497.14 to the employe as compensation, *not* including medical aid. In reply to a later question, the employer answers, "Petitioner has already been paid compensation for twenty per cent. of total permanent disability and respondent contends that he has been liberally and fully compensated for his disability resulting from the alleged accident."

The next page in the record reveals an order dismissing this petition which recites that a formal petition was filed, praying for compensation for *increased disability* and an answer was filed by the respondent denying that there is any increase in the disability, and a finding that the disability of the petitioner has not increased beyond the amount paid,

namely, twenty per cent. of total. Thereupon the deputy commissioner of labor, on May 23d, 1933, signed the order dismissing the petition.

We turn to the record upon which this order of dismissal was predicated and find no testimony from any witness as to what the injuries and the resultant disabilities were. We find that counsel for the employer stated that the petitioner suffered an accident on October 10th, 1930; that compensation for temporary disability had been paid in full and that, in addition, respondent had paid petitioner for partial, permanent disability in the sum of twenty-per cent. of total. Then counsel said this was an application for compensation for increased disability over and above that sum and that the employer contended the petitioner had been fully compensated and that the petition should be dismissed. Thereupon a Doctor Markens, presumably a witness for the petitioner (although there is nothing to indicate whether this medical witness or the one who followed him testified for the petitioner or the employer), was sworn. This witness said that he examined the petitioner on July 6th, 1932, and that at that time he "felt that the disability was twenty per cent. of total;" that he examined him twice since that time and his findings were almost identical with those of his first examination and that in his judgment the petitioner had no increased disability.

A second medical witness, a Doctor Robbins, said he had examined the petitioner "once in January and once in May." The year is not stated. He then says, "my findings were as those of Doctor Marken's. I agree that there is a definite, permanent disability of twenty per cent." Thereupon the petitioner was called to the stand by his own counsel, who addressed the petitioner in these words: "Mr. Smith, your petition is being dismissed at the present time and you cannot apply to this court to reopen this case and in consideration thereof you are going to receive payment from the company in the amount of $850 and out of that the expenses will be $215, leaving you a balance of $635. You understand that this is all you can ever receive from this company for these in-

juries?" to which the petitioner answered, "yes," and further that he was satisfied with that arrangement. Thereupon counsel for the employer, under the heading of cross-examination, said, "Mr. Smith, you understand that we are not paying you because we believe you have any increased disability. We are paying you this money in consideration of this waiver of right of appeal of this order of dismissal? *A.* Yes. *Q.* If the court dismisses this case to-day you must appeal from the order within thirty days and if you don't appeal then the order stands and we will pay you this money in consideration of your waiver of the right to appeal? *A.* Yes. *Q.* And that means that your case is finally closed? *A.* Yes. *Q.* And you can at no future time make future application for compensation? *A.* Yes." Then there was a question to the petitioner by his own lawyer: "*Q.* And you understand that you have to wait thirty days for this money? *A.* Yes." Then a further question by counsel for the employer. "*Q.* And this is agreeable to you? *A.* Yes." The deputy commissioner then said, "after listening to the testimony of the various doctors and the petitioner and the respondent, I feel that the petitioner has been amply compensated by the payment of twenty per cent. of total and the petition is hereby dismissed." That ended the testimony.

The foregoing is virtually a *verbatim* reproduction of the entire testimony.

In view of the statute, practice such as this, leading to a result where an employer or his insurance carrier simply purchases a release from the workman, cannot meet with judicial approval. The petitioner, as stated above, was not heard concerning his injuries or the then state of his disability, nor did the medical witnesses state what the petitioner's injuries consisted of, what functional disability resulted, nor relate in any manner just how they arrived at their conclusions, which were in entire accord one with the other. The object was to dispose of the claim for increased disability and to accomplish it by an agreement not to appeal (for that is what it was in substance), the consideration of which was the promise to pay a lump sum of $850, *after* the right to appeal from the dismissal of the petition had lapsed.

The philosophy and aim of the Workmen's Compensation act is to provide weekly compensation, continuously over a proper period, as fixed by law, in lieu of wages. The injured workman may not legally and efficaciously barter away the rights afforded him by statute. This statute is affected with a public interest and any surrender of his rights by a petitioner is, as such, invalid, because it is contrary to public policy. The statute provides that no agreement between the parties for a sum other than that which may be determined by the statutory authority shall be a bar to a determination of the controversy upon its merits or to the award of a different sum if it be determined that the amount agreed upon is less or more than the injured employe or in case of death his dependents are entitled to receive. *Pamph. L.* 1913, *ch.* 174, *p.* 302, *Pamph. L.* 1921, *ch.* 230; *p.* 736, § 20-b. In our view, the testimony taken prior to the order of dismissal, at which a bargain was struck to pay the sum of $850 to the petitioner for his release, can hardly be called a hearing on the merits. Such hearing the petitioner never had. There has been no previous hearing or award to refer to; hence there was nothing in the case from which the deputy commissioner could possibly be informed as to the nature, extent and results of the petitioner's injuries, except the statement of the doctors, who, failing to say even what the injuries were, contented themselves with the conclusion that the assumed disability of twenty per cent., voluntarily paid by the employer, had not increased.

On June 24th, 1933, the sum of $850 was paid for a release. Thereafter, and on May 17th, 1935, the employe filed a second petition for increased disability in which he reiterated the statement of his injuries and their results and said that the disability had materially increased since the date of the last hearing and award. He acknowledged receipt of the additional $850, which was paid him on June 24th, 1933, after the thirty-day period within which he might appeal had elapsed. The respondent's answer consisted of a denial that the petitioner was entitled to any further compensation and particularly relies on the order of dismissal of

May 23d, 1933, and a release in the sum of $850, in settlement of all further claims the petitioner might have had. This petition and answer was brought on before a different deputy commissioner. There was no testimony, merely colloquy between court and respective counsel. Counsel for the employer moved for a dismissal of this petition on the strength of the dismissal of the previous petition on May 23d, 1933, contending that if the petitioner was dissatisfied with the order dismissing his petition, his remedy was by appeal to the Common Pleas Court, which right of appeal he waived by agreement; that he was paid $850 for so doing. Counsel for the petitioner, who also appeared for him in May, 1933, resisted this application, saying the petitioner was injured on October 10th, 1930; that he was paid by agreement for temporary disability up to April 1st, 1931, and in addition was paid twenty per cent. of total; that when the petition which was dismissed was filed, the company, presumably the insurance carrier, agreed to pay $750 and $100 for additional expenses and "desired that the petition be dismissed."

Counsel argues that a year and a half after the dismissal of May 23d, 1933, the condition of petitioner became worse and the respondent had the petitioner operated on. Petititioner's counsel further argues that any agreement he made with the insurance carrier, or the employer, or counsel, was not binding on the petitioner.

After a careful exposition of the facts in the matter, the deputy commissioner concluded that the petition before him for compensation for increased disability could not be considered as a supplemental petition for review under the provisions of paragraph 21-f of the statute because there was no previous petition upon which an award of compensation was recovered, which award alone could be the basis for the review as contemplated by the act, nor could the petition be considered as filed for the purpose of reviewing the order dismissing his previous petition, the remedy for such grievance being by appeal. He therefore considered the petition before him as an original petition, notwithstanding the dismissal of a previous petition after a "hearing on the merits." Viewed

in this aspect, the deputy concluded that the matter was regulated by the provisions of paragraph 5 of the statute, as amended in 1931, and he therefore found that the petition of May 17th, 1935, was not filed within two years from the date of the accident, nor within two years from the date of the failure of the respondent to make payment of compensation pursuant to agreement, nor within two years from the date of cessation of compensation payment. He had in mind the compensation, by agreement, based on twenty per cent. of permanent and total disability and says that the last payment under that agreement was made in January, 1933, which is true.

As to the $850 paid subsequent to the dismissal of the previous petition, the deputy commissioner said that he was unable to find any evidence which would justify the inference that this sum was paid as lawful compensation. He reasons that this sum was paid either (1) as compensation, or (2) as reimbursement for medical treatment, or (3) as a gratuity for which petitioner forebore his right of appeal after hearing, and he also thought that an inference holding that the payment of $850 was in discharge of lawful compensation to be the least probable. Be that as it may, and taking up the third supposition first, it is obvious that the payment could not be "as a gratuity for which petitioner forebore his right of appeal." This statement is almost a contradiction in terms since a gratuity is a gift or a donation and as such implies no consideration. On the second supposition, there is absolutely no testimony to support the inference or the conclusion that it could be reimbursement for medical treatment. As a matter of fact, at the conference before the deputy commissioner, if we are to take what was said by the petitioner's counsel as true (and it wasn't controverted by opposing counsel), the employer had had the petitioner operated upon by its own doctor and presumably it was at the expense of the employer. This would be some evidence tending to negative the idea that the payment was for medical attention.

Now if it should be the fact that the $850 was paid as compensation, then regardless of the terms used in describing the

payment, it was by agreement and came under the provisions of 23-h of the statute (see *Ecken* v. *O'Brien,* 115 *N. J. L.* 33), and the petition for compensation for increased disability should have been entertained. It would have been filed within time.

The cases relied upon by the deputy commissioner, *Pathe Exchange, Inc.,* v. *Court of Common Pleas of Hudson County,* 3 *N. J. Mis. R.* 652; *affirmed,* 102 *N. J. L.* 443, and *Blackford* v. *Green,* 87 *Id.* 359; *affirmed,* 89 *Id.* 357, as support for the proposition that of the three suppositions possible, that the payment was intended as further compensation was the least probable, are not, we think, controlling on the issue here considered. In our view, the inference is permissible that the payment made, after the first petition was dismissed, might be considered to have been in the nature of further compensation. That is what the employe sought and that was the purpose for which the petition was filed. There is no proof that the payment was made for medical expenses and the suggestion that the money was a gratuity is hardly tenable.

At the conference between court and counsel, on the second petition, the employer's lawyer baldly stated that the $850 was the price of a release. As we have said, releases in compensation cases cannot be purchased in the face of the statute which enjoins that that which is justly due shall be paid—no more and no less. Perhaps the employe is entitled to no further compensation and perhaps he is. We do not know, but there should be no reason for speculation about the matter. The facts should have been ascertained upon proof. If the money was paid for medical expenses that supposition could have been readily proved or disproved and the testimony of witnesses would be very helpful as to whether the payment was made for either of the other contingencies mentioned by the deputy commissioner.

We conclude, therefore, that the matter should be sent back to the compensation bureau for a determination of the facts. The cause is therefore remanded to the bureau for that purpose.